UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD STITT,

      Plaintiff,

                                       Case No. 06-CV-11849-DT

v.

                                       HONORABLE DENISE PAGE HOOD

DYLAN CONSTRUCTION, INC.,
MIDWEST INDUSTRIAL FLOORING, INC.,
GLENN ROSTIN and LEAH ROSTIN,

      Defendants.

_____/

## MEMORANDUM OPINION AND ORDER
## AND
## NOTICE OF SCHEDULING CONFERENCE

## I.    BACKGROUND

On April 19, 2006, Plaintiff Todd Stitt filed the instant action against Defendants Dylan Construction, Inc., Midwest Industrial Flooring, Inc., Glenn Rostin, and Leah Rostin claiming: 1) Whistleblowers Protection Act (Count I); 2) Public Policy (Count II); 3) RICO violations (Count III); 4) Civil Conspiracy (Count IV); 5) Fraud (Count V); and 6) Conversion (Count VI). Defendant businesses sell floor installation services throughout the United States and individual Defendants are the owners of the businesses. (Complaint, ¶¶ 10-11) Plaintiff worked for Defendant business from approximately January 2000 until January 2006 as a foreman. (Complaint, ¶¶ 12-13) Plaintiff was paid on a weekly basis and the checks were delivered to Plaintiff by private carrier. (Complaint, ¶¶ 14-15)

Plaintiff received his W-2s in January 2006 and learned that Defendants improperly reported his wages to the IRS, failed to pay the Government the taxes withheld from Plaintiff's pay checks,

and failed to refund these funds to Plaintiff.  (Complaint, ¶¶ 18-19, 21, 23, 25) When Plaintiff told

Defendants he was going to report Defendants to the IRS, he was immediately terminated by

Defendants on January 23, 2006.  (Complaint, ¶¶ 27-28)

Plaintiff filed the instant suit on April 19, 2006.  On May 15, 2006, Plaintiff filed a Request

for Clerk's Entry of Default.  The Clerk entered a default against all Defendants on May 16, 2006.

On May 26, 2006, Plaintiff filed a Motion for Default Judgment and a hearing on the motion was

scheduled for and held July 12, 2006 and continued on July 18, 2006.  At the hearing, Plaintiff

testified and presented an expert witness on damages.  Plaintiff requested over $4 million in

damages.  On July 12, 2006, a Motion to Vacate was filed by Defendants.  Plaintiff filed a Motion

to regarding Defendants' Motion to Vacate requesting the Court to summarily deny the motion.

Plaintiff also filed a response to Defendants' Motion to Vacate.

## II.   ANALYSIS

### A.   Standard

Rule 55(c) of the Rules of Civil Procedures states, "[f]or good cause shown the court may

set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside

in accordance with Rule 60(b)."  Here, Rule 55(c) applies since only a default and not a default

judgment has been entered by the Court.

Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry

of default. *Shepard Claims Service v. William Darrah & Assoc.,* 796 F.2d 190, 193 (6th Cir. 1986).

Three factors must be weighed by the court in order to determine whether to set aside a default under

Rule 55(c):  1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious

defense; and 3) whether culpable conduct of the defendant led to the default.  *Id.* at 192.  All three

2

factors must be considered in ruling on a motion to set aside entry of default. *Id.* at 194. However, when the first two factors militate in favor of setting aside the entry of default, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in absence of a wilful failure of the moving party to appear and plead. *Id.* In a Rule 55(c) motion to set aside entry of default, the "good cause" standard is applied and it is not absolutely necessary that the neglect or oversight as reason for the delay be excusable. The Sixth Circuit notes that a more lenient standard is applied to a Rule 55(c) motion where there has only been an entry of default as opposed to a Rule 60(b) motion where a default judgment has been entered. *Id.* at 193. Since entry of default is just the first procedural step on the road to obtaining a default judgment, the same policy of favoring trials on the merits applies. *Id.* All ambiguous or disputed facts should be construed in the light most favorable to the defendant in determining whether to set aside the entry of default. *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.,* 815 F.2d 391, 398 (6th Cir. 1987).

**B.** **First Factor/Prejudice to Plaintiff**

As to the first factor, whether plaintiff will be prejudiced, Plaintiff claims that it will be prejudiced because the Motion to Vacate was filed solely to give Defendants more time to try to liquidate their assets to avoid the inevitable judgment in this matter. Defendants argue that mere delay in obtaining judgment does not constitute prejudice. Defendants claim the issues involved in this care are largely numerical, there is no evidence subject to deterioration over time, the evidence related to wages is recorded and are not subject to loss or destruction.

To establish prejudice, a Plaintiff must show that vacating the default will result in the loss of evidence, increase difficulties in discovery, or greater opportunities for fraud and collusion. *INVST Fin. Group,* 815 F.2d at 398. "[D]elay alone is not a sufficient basis for establishing

prejudice." *Id.* at 398. Mere delay in satisfying a claim, should a plaintiff ultimately succeed at trial, is insufficient to show prejudice and does not require denial of a motion to set aside a default. *Newhouse v. Probert*, 608 F.Supp. 978, 984 (W.D. Mich. 1985). In *Shepard Claims Service,* the court of appeals found that because defendant filed an entry of appearance and an answer shortly after learning that default had been entered, the delay was not lengthy and there was no pattern of disregard for court orders or rules. *Shepard Claims Service,* 796 F.2d at 194. The strong policy in favor of deciding cases on the merits outweighed any inconvenience to the court or plaintiff. *Id.*

While Plaintiff claims that Defendants are attempting to liquidate their assets in order to avoid the inevitable judgment in this case, Plaintiff has not alleged that vacating the default would result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. There is no allegation by Plaintiff that the attempt to liquidate assets constitutes fraud. In *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that the district court had no authority to issue a preliminary injunction preventing a defendant from disposing of assets pending adjudication of a plaintiff's claim for monetary damages. *Id.* at 333.

Plaintiff indicates that although Plaintiff's counsel has been in contact with someone who purported to be counsel for Defendants, Timothy W. Longacre, an appearance or pleadings on behalf of Defendants was not filed until the day of the scheduled default judgment hearing. The Court agrees that a two-month delay in filing an appearance on behalf of Defendants is well-beyond the 20 days required to answer a Summons and Complaint. Local defense counsel admits to the delay due to communication issues, logistical matters involving admission to the Eastern District, and obtaining local counsel. Plaintiff's counsel had notice that Defendants were attempting to respond

4

to the lawsuit, albeit belatedly.  However, the Court finds that other than delay, Plaintiff has not shown that vacating the default will result in prejudice to his case.

    **C.**    **Second Factor/Meritorious Defense**

As to the second factor--whether Defendants have a meritorious defense–Defendants claim that while there may have been some errors in the computation of taxes and inexperienced persons handling the taxation and payroll matters, they do not rise to the level of intentional misconduct. Defendants claim these errors do not constitute RICO violations.  Defendants further claim that the income reported by Plaintiff appears to be well in excess of what anyone in the company made on an annual basis.  Defendants also claim that terminating an employee based upon work related issues such as loss of certain contracts, decline in sales and/or work do not constitute wrongful termination or a termination in violation of the laws, such as Whistleblower protection claims.  Defendants further claim that discovery will further reveal any other valid defenses to Plaintiff's claims.

Plaintiff responds that Defendants' "alleged" meritorious defenses ring hollow.  Plaintiff claims that Defendants have known since January 2006 that they failed to properly report Plaintiff's taxes and that any book keeping mistake is hard to believe because Defendant Leah Rostin is a book keeper for a major hospital in Florida.  Plaintiff further states that the Affidavit of Marcus Taylor supports Plaintiff's claim that Plaintiff was terminated because he told Defendants Plaintiff was gong to report them to the IRS for tax fraud.

Plaintiff's arguments go to the merits of the case.  The affidavit submitted by Plaintiff is subject to be tested during discovery.  Plaintiff does not respond to Defendant's defense to a RICO claim.  The Court briefly addresses the Whistleblower and RICO claims below–the two claims the parties address in their briefs.

2:06-cv-11849-DPH-DAS   Doc # 16   Filed 08/10/06   Pg 6 of 10   Pg ID 203

###### 1.   __Whistleblower Claim__

Plaintiff did not cite a particular Whistblower statute in his Complaint.  The Court assumes it is a claim under the Michigan's Whistleblower Protection Act.  In order to prevail on a claim under Michigan's Whistleblower Protection Act, a plaintiff must demonstrate that "(1) he was engaged in protected activity as defined by the act; (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge." *Chandler v. Dowell, Schlumberger, Inc.,* 456 Mich. 395, 399, 572 N.W.2d 210, 212 (1998); *see also* Mich. Comp. Laws § 15.362.  An individual engages in a "protected activity" when he:  (1) reports a violation or suspected violation of a law or regulation to a public body, (2) is about to report such a violation to a public body, or (3) is asked by a public body to participate in an investigation.  *Trepanier v. Nat'l Amusements, Inc.,* 250 Mich.App. 578, 583, 649 N.W.2d 754, 757 (2002). To have engaged in a protected activity under the Whistleblowers' Protection Act, the plaintiff reasonably must believe a violation of law, regulation, or rule has occurred. *See Melchi v. Burns Int'l Sec. Serv. Inc.,* 597 F.Supp. 575 (E.D. Mich.1984).  Under the third element of the whistleblower claim, the motivation of an employee reporting a suspected violation "must be a desire to inform the public on matters of public concern." *Shallal v. Catholic Soc. Servs. of Wayne County,* 455 Mich. 604, 621, 566 N.W.2d 571, 579 (1997). Otherwise, the plaintiff cannot "establish a causal connection between her actions and her firing." *Ibid.*  The Michigan Supreme Court explained:  Many courts have held that a plaintiff is precluded from recovering under a whistleblower statute when the employee acts in bad faith. *See, e.g., Melchi v. Burns Int'l Security Services, Inc.,* 597 F.Supp. 575 (E.D. Mich.1984), *Wolcott v. Champion Int'l Corp.,* 691 F.Supp. 1052 (W.D. Mich.1987). The primary motivation of an employee pursuing a whistleblower claim "must be a desire to inform the public on matters of

6

public concern, and not personal vindictiveness." *Id.* at 1065. *Id.* at 621-22, 566 N.W.2d at 579.

Viewing the circumstances in a light most favorable to Defendants at this stage without benefit of discovery, Defendants' claim that the payroll and calculation of taxes were miscalculations and not intentional violations of the IRS laws creates a question of fact. If discovery bears this out, then Plaintiff may not be able to make a *prima facie* case under the whistleblower statute.

### 2.    RICO Claim

A plaintiffs who asserts a civil action under 18 U.S.C. § 1962(c), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), must show that the defendants have engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). A RICO enterprise is defined as "any individual, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise element must be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associations function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 584 (1981). The continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis. *United States v. Tocco*, 200 F3d 401, 425 (6th Cir. 2000)(quoting *United States v. Kragness,* 830 F.2d 842, 856 (8th Cir. 1987)). A plaintiff must "show an ascertainable structure distinct from any structure inherent in the conduct of a pattern of racketeering activity." *Tocco*, 200 F.3d at 425. An enterprise is a separate and distinct entity from the person or named-defendants. *Durant v. Servicemaster Co.,* 159 F.Supp.2d 977, 981 (E.D. Mich. 2001)("A RICO enterprise 'cannot merely

consist of the named defendants.'") (quotation omitted).  Because of the disgrace that a RICO claim

may bring to a defendant, courts should eliminate frivolous RICO claims at the earliest stage of

litigation.  *Id.*

In this case, viewing the circumstances in a light most favorable to Defendants, Defendants'

claim that computational errors do not constitute RICO violations is not without merit.  Without the

benefit of discovery in this case, the Court is unable to determine whether the conduct complained

of by Plaintiff was merely due to computational errors.  There may also be questions of fact whether

there is a distinct structure and/or organizational pattern or system to constitute an enterprise in order

to establish a RICO violations.  A denial of the allegation that it did not participate in violating the

RICO statute constitutes a defense to Plaintiff's RICO claim.  *INVST Financial Group*, 815 F.2d at

398.  Plaintiff has not carried his burden that Defendants are unable to show a defense to the RICO

claim.

**D.    Third Factor/Conduct by Defendants**

The third factor is whether culpable conduct of the defendants led to the default.  Plaintiff

claims that Defendants are culpable because after Steven J. Groth, an attorney, attempted to contact

Defendants, "they did not respond," citing to Defendants' brief.  (Plaintiff's Resp. Br., p. 5)  A

review of Defendants' brief shows that defense counsel did not expressly state this in the motion.

To find culpability, Defendants' conduct must display either an intent to thwart judicial

proceedings or a reckless disregard for the effect of their conduct on those proceedings.  *Shepard*

*Claims Service,* 796 F.2d at 194.  It appears that all the Defendants were served on April 21, 2006.

On April 24, 2006, three days after service, a copy of the Complaint and Summons was faxed to Mr.

Groth, who was on vacation.  Mr. Groth did not find the fax until several days after his return from

8

vacation.  He attempted to contact Defendants but was unsuccessful.  Mr. Groth then forwarded the Complaint and Summons to Mr. Longacre who immediately contacted Plaintiff's counsel on May 15, 2006 requesting more time to file an Answer.   On May 26, 2006, Mr. Longacre notified Plaintiff's counsel that local counsel had been retained and would file an appearance the next week.  Although local defense counsel did not indicate why he waited until July 12, 2006 to file the Motion to Vacate, there is no indication that this delay was due to Defendants' conduct.  It is noted that Defendants attempted to contact an attorney a few days after service of the Complaint.  If the delay between May 26 to July 12, 2006 was due to local defense counsel's actions, the entry of a default judgment should not be used to discipline attorneys because it is the client who suffers by being deprived of his or her day in court.  *Shepard Claims Service,* 796 F.2d at 195.  The record before the Court at this time does not exhibit a circumstance in which a client should suffer the ultimate sanction of losing a case without any consideration of the merits because of an attorney's neglect and inattention.  *Id.*  Plaintiff has not shown that Defendants have intended to thwart judicial proceedings or acted in reckless disregard for the effect of their conduct in these proceedings.  A two-month delay from service to the filing of the Motion to Vacate, without more, does not constitute culpable conduct by Defendants.

Weighing the three factors set forth above, the Court finds that the Clerk's Entry of Default must be vacated at this time.


III.    **CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Vacate **(Docket No. 11, filed July 12, 2006)**

9

is GRANTED.  The Clerk's Entry of Default **(Docket No. 4, filed May 16, 2006)** against

Defendants is SET ASIDE.

IT IS FURTHER ORDERED that Plaintiff's Motion for Default Judgment **(Docket No. 5,**

**filed May 26, 2006)** is MOOT.

IT IS FURTHER ORDERED that Plaintiff's Emergency Motion Regarding Defendant's

Motion to Vacate to summarily deny Defendants' Motion to Vacate **(Docket No. 13, filed July 14,**

**2006)** is MOOT.

IT IS FURTHER ORDERED that Defendants file an Answer to the Complaint by **Monday,**

**August 25, 2006.**  A Scheduling Conference will be held on **Monday, September 11, 2006, 3:30**

**p.m.**


  */s/ DENISE PAGE HOOD*
DENISE PAGE HOOD
United States District Judge

DATED: August 10, 2006



I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

10